1

2

3

4                          UNITED STATES DISTRICT COURT

5                                DISTRICT OF NEVADA

6                                        * * *

7    UNITED STATES OF AMERICA,                      Case No.:  2:18-cr-00259-KJD-GWF

8                               Plaintiff,          **FINDINGS AND RECOMMENDATION**

9          v.                                        **Re:  Motion to Dismiss (ECF No. 22)**

10   JORGE RAMOS-BARAJAS,

11                               Defendant

12

13

14        This matter is before the Court on Defendant Jorge Ramos-Barajas's Motion to Dismiss

15   Indictment (ECF No. 22), filed on January 28, 2019.  The Government filed its Opposition (ECF

16   No.  28) on February 25, 2019, and Defendant filed his Reply (ECF No. 31) on March 8, 2019.

17   The Court conducted a hearing in this matter on March 12, 2019.  As a result of the issues

18   discussed during the hearing, the Court directed the parties to file supplemental briefs.  The

19   Government filed its Supplemental Brief (ECF No. 33) on March 19, 2019 and Defendant filed

20   his Reply (ECF No. 34) on March 26, 2019.

21                                   **BACKGROUND**

22        Defendant Jorge Ramos-Barajas is charged in the indictment with being a deported alien

23   found unlawfully in the United States in violation of 8 U.S.C. § 1326.  The indictment alleges

24   that Defendant was deported and removed from the United States on February 7, 2012, and that

25   he was thereafter found in the United States on July 21, 2016, "having reentered and remained in

26   this country, and not having obtained express permission from the Attorney General of the

27   United States or the Secretary for Homeland Security, to apply for admission into the United

28   States." *Criminal Indictment* (ECF No.1).

                                            1

1       Defendant Ramos-Barajas was convicted on September 2, 2011 in the District Court,

2   Clark County, Nevada of possession of a controlled substance with intent to sell (a category D

3   felony) in violation of Nevada Revised Statute (NRS) 453.337.  *Government's Opposition* (ECF

4   No. 28), *Exhibits 1* and *2*.  On January 19, 2012, he was served with a Notice to Appear for a

5   removal hearing before an immigration judge ("IJ").  The Notice stated that Defendant was

6   subject to removal (1) pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality

7   Act ("INA") (8 U.S.C. § 1182(a)(6)(i)) because he was an alien present in the United States

8   without having been lawfully admitted or paroled; and (2) pursuant to Section 212(a)(2)(A)(i)(II)

9   (8 U.S.C. § 1182(a)(2)(i)(II)) because he had been convicted of a crime "relating to a controlled

10  substance (as defined in Section 102 of the Controlled Substances Act (21 U.S.C. § 802))."  *See*

11  *Motion to Dismiss* (ECF No. 22), *Exhibit A*.

12      Following the removal hearing on January 30, 2012, the immigration judge ordered that

13  Defendant be removed from the United States.  Defendant waived his right to appeal from the

14  removal order.  *Motion to Dismiss* (ECF No. 22), *Exhibit C*.  Although a transcript of the

15  removal hearing has not yet been obtained, the parties do not dispute that the immigration judge

16  viewed the Defendant's prior conviction as an "aggravated felony" under Section 237(a)(2) of

17  the INA (8 U.S.C. § 1227(a)(2)(iii)).  The only statutory definition of "aggravated felony" under

18  which Defendant's conviction would qualify as such is 8 U.S.C. § 1101(a)(43)(B) which defines

19  the term to include "illicit trafficking in a controlled substance (as defined in section 102 of the

20  Controlled Substances Act [21 U.S.C. § 802], including a drug trafficking crime (as defined in

21  section 924(c) of Title 18, United States Code)."

22      An alien who has  been convicted of an aggravated felony is not eligible for discretionary

23  relief from deportation or removal.  *Montcrieffe v. Holder*, 569 U.S. 184, 133 S.Ct. 1678, 1682

24  (2013).  Absent an aggravated felony conviction, the immigration judge must inform the alien of

25  his or her eligibility to apply for discretionary relief, including voluntary departure.  An alien

26  who has been granted voluntarily departure is not subject to prosecution under 8 U.S.C. § 1326 if

27  he is later found in the United States.  Because the immigration judge viewed Defendant's prior

28

1   conviction as an aggravated felony, he did not advise Defendant that he was eligible to apply for

2   voluntary departure.

3      The initial focus of Defendant's motion to dismiss was that his Nevada conviction under

4   NRS 453.337 did not categorically qualify as an aggravated felony because the scope of conduct

5   punishable under that statute is broader than the scope of conduct punishable under 21 U.S.C. §

6   802.  Defendant also argued that NRS 453.337 is not a divisible statute, and, therefore, the Court

7   cannot apply the "modified categorical approach" to determine if the conduct for which

8   Defendant was convicted qualifies as a drug trafficking offense under the federal statute.  The

9   Government has stipulated for purposes of this case that Defendant's conviction under NRS

10   453.337 is not an aggravated felony.[1]  Based on that stipulation, the focus of the motion to

11   dismiss turned to whether the immigration judge's failure to inform Defendant that he was

12   eligible to apply for voluntary departure violated his constitutional right to Due Process of Law

13   and caused him prejudice.

14               **DISCUSSION**

15      An alien charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right

16   to collaterally attack his removal order because it serves as a predicate element for conviction

17   under the statute.  *United States v. Cisnersos-Rodriguez*, 813 F.3d 748, 755 (9th Cir. 2015)

18   (citing *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004) and *United States*

19   *v. Mendoza-Lopez*, 481 U.S. 828, 837-38, 107 S.Ct. 2148 (1987)).  The defendant's right to

20   collaterally attack the removal order is codified in 8 U.S.C. § 1326(d).  Under the statute, "a

21   defendant must, within constitutional limitations, demonstrate that (1) he exhausted all

22

[1] In *United States v. Figueroa-Beltran*, 892 F.3d 997 (9th Cir. 2018), the issue before the court was
23   whether the defendant's prior conviction under NRS 457.337 is a drug trafficking offense under Section
2L.12 of the Sentencing Guidelines which would increase defendant's sentence following his conviction
24   under 8 U.S.C. § 1326.  The Ninth Circuit found that Nevada Supreme Court decisions are in conflict as
to whether NRS 457.337 is a divisible statute.  The court, therefore, certified the question of divisibility to
25   the Nevada Supreme Court, which it has yet to answer.  In *United States v. Aquero-Cadenas*, 2018 WL
3518453, at *3 (D.Nev. Jul. 20, 2018), the district court dismissed an indictment under 8 U.S.C. § 1326
26   on the ground that defendant's conviction under NRS 453.337 does not qualify as an aggravated felony,
and that the immigration judge failed to inform him of any potential relief from removal.  Although the
27   district court was aware of the decision in *Figueroa-Beltran*, it concluded that NRS 453.337 is not a
divisible statute.  The Government has appealed from the dismissal order.
28

1   administrative remedies available to him to appeal his removal order, (2) that the underlying

2   removal proceedings at which the order was issued improperly deprived him of the opportunity

3   for judicial review, and (3) the entry of the order was fundamentally unfair." *Id.* at 755-756.  An

4   underlying removal order is fundamentally unfair if (1) the defendant's due process rights were

5   violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a

6   result of the defects.

7        The immigration judge is obligated to inform an alien of his apparent eligibility for forms

8   of relief from deportation such as voluntary departure.  *United States v. Valdez-Novoa*, 780 F.3d

9   906, 913 (9th Cir. 2015) (citing 8 C.F.R. § 1240.11(a)(2) and *United States v. Arrieta*, 224 F.3d

10  1076, 1079 (9th Cir. 2000)).  "[W]here the record contains an inference that the petitioner is

11  eligible for relief from deportation, 'the IJ must advise the alien of this possibility and give him

12  the opportunity to develop the issue."  *Arrieta*, 224 F.3d at 1079.  The immigration judge's

13  failure to so inform the alien, excuses him from having to demonstrate that he exhausted any

14  administrative remedies that might have been available.  *Valdez-Novoa*, 780 F.3d at 913 (citing

15  *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1015 (9th Cir. 2013)).  It also serves to deprive

16  the alien of the opportunity for judicial review.  *Id.* (citing *United States v. Rojas-Pedroza*, 716

17  F.3d 1253, 1262 (9th Cir. 2013)).  *See also United States v. Gonzalez-Flores*, 804 F.3d 920, 927

18  (9th Cir. 2015).  Under the third prong of § 1326(d), the alien has the burden of proving

19  prejudice.  *Valdez-Novoa*, 780 F.3d at 916-17; *Gonzalez-Flores*, 804 F.3d at 927.

20       The immigration judge's failure to advise an alien of his apparent eligibility for voluntary

21  departure causes prejudice only if it was plausible that the immigration judge would have granted

22  voluntary departure if had it been requested.  *Valdez-Novoa*, 780 F.3d at 914 (citing *United*

23  *States v. Cisneros-Resendiz*, 656 F.3d 1015, 1018 (9th Cir. 2011)).  Establishing "plausibility"

24  requires more than establishing a mere possibility or that it was conceivable that voluntary

25  departure would have been granted.  *Id.* at 914-15.  The court in *Valdez-Novoa* explained the

26  general process for determining whether the defendant was prejudiced:

27       Every case involving the prejudice prong of § 1326(d)(3) proceeds in much the
         same way: the defendant cites cases from the courts and the BIA where an

28

4

1
2
3
4

> alien with similar equities was granted the discretionary relief at issue, and the government distinguishes those cases, cites cases to the contrary, or argues that the cases relied on by the defendant are outliers. We have always (1) placed the burden on the defendant to show that he was prejudiced by the due process violation, (2) evaluated the authorities cited by the defendant, (3) compared them to the authorities offered by the government, and (4) determined whether the defendant has carried his burden to prove that he suffered prejudice.

5       780 F.3d at 916.

6       In determining plausibility, the court first identifies the factors relevant to the

7    immigration judge's exercise of discretion for the relief being sought.  Second, the court

8    determines whether in light of those factors, and based on the unique circumstances of the alien's

9    own case, it is plausible that the immigration judge would have exercised his discretion in the

10   alien's favor. *Id.* at 917 (citing *Rojas-Pedroza*, 716 F.3d  at 1263).  The factors relevant to

11   granting voluntary departure are the alien's negative and positive equities. *Id.* (citing *Matter of*

12   *Gamboa*, 14 I. & N. Dec. 244, 248 (BIA 1072); *Rojas-Pedroza*, 716 F.3d  at 1264-65).  "The

13   negative equities include 'the nature and underlying circumstances of the deportation ground at

14   issue; additional violations of the immigration laws; the existence, seriousness, and recency of

15   any criminal record; and other evidence of bad character or the undesirability of the applicant as

16   a permanent resident.' *Matter of Arguelles–Campos,* 22 I. & N. Dec. 811, 817 (BIA 1999).  The

17   positive equities 'are compensating elements such as long residence here, close family ties in the

18   United States, or humanitarian needs.' *Id.*" *Valdez-Novoa*, 780 F.3d at 917.

19      The indictment alleges that Defendant Ramos-Barajas was deported and removed from

20   the United States on or about February 7, 2012. *Indictment* (ECF No. 1).  No other deportations

21   or removals are alleged.  Defendant argues that he had only one prior voluntary return to Mexico

22   and only one criminal conviction.  He states that "[a]part from these two contacts with law

23   enforcement officials, only one of which resulted in a conviction, there is no other evidence of

24   bad character." *Defendant's Reply to Government's Supplemental Response* (ECF No. 34), at 3.

25   Defendant does not cite any positive equities such as long residence in the United States, close

26   family ties in the United States, or humanitarian needs.  The Government cites only Defendant's

27   September 2011 felony conviction for possession of a controlled substance with intent to sell as a

28   negative equity.  Thus, the Court must determine whether it was plausible that the immigration

5

1   judge would have granted a request for voluntary departure, based solely on Defendant's limited

2   criminal record and lack of prior deportations, but without any positive equities.

3       The Ninth Circuit's decision in *United States v. Gonzalez-Flores*, 804 F.3d at 928-29,

4   casts considerable doubt on Defendant's assertion that it is plausible he would have been granted

5   voluntary departure.  The defendant in that case had a 2004 conviction for robbery in violation of

6   California Penal Code § 211 and was sentenced to 210 days in the county jail.  He also had two

7   prior misdemeanor convictions for driving without a license and for loitering in a park after

8   hours.  The defendant entered the United States from Mexico in 1999 when he was 15 years old.

9   He attended high school, but dropped out after the eleventh grade to start working.  He was

10  employed for several years at the airport loading food onto passenger planes.  Following his

11  robbery conviction, defendant was deported in November 2004.  He reentered the United States

12  in 2008, and again in 2013 at which time he was indicted under 8 U.S.C. § 1326.

13      The court noted that defendant's positive equities were "minimal." *Id.* at 928.  Although

14  the immigration judge was not informed of defendant's high school attendance and work history,

15  the court stated that "these additional facts did not contradict the IJ's conclusion that Gonzalez-

16  Flores' equities were 'very few except for those normally associated with any residence of any

17  duration.'  Because none of Gonzalez-Flores' family members were United States citizens or

18  lawful permanent residents, and because he resided in the United States for only five years, he

19  lacked close family ties to the United States or a long residence here, the most typical favorable

20  equities deemed important in other cases.  *See Arguellas-Campos*, 22 I. & N. Dec. at 817." *Id.*

21  In holding that the defendant had not met his burden of showing that aliens in similar

22  circumstances received relief, the court stated:

23      The Ninth Circuit cases identified by Gonzalez–Flores involve aliens who had
        far more significant positive equities, even though they also had more
24      significant negative equities. Gonzalez–Flores has pointed to no case in which
        an alien with so few positive equities has been granted relief. In *United States
25      v. Alcazar–Bustos,* we held that it was plausible a defendant would be granted
        voluntary departure where the defendant had lived in the United States since he
26      was two months old and had a United States citizen wife and child, even
        though the defendant's criminal history included firearm possession
27      convictions, and showed association with gang members and prior drug use.

28

6

382 Fed.Appx. 568, 569–71 (9th Cir. 2010). Likewise, in *United States v. Vasallo–Martinez,* we held it was plausible a defendant would be granted voluntary departure where the defendant resided in the United States for 21 years, had a United States citizen wife and child, and owned a business, because these positive equities outweighed the defendant's four convictions for driving under the influence and three unrelated misdemeanors. 360 Fed.Appx. 731, 732–33 (9th Cir. 2009).

Gonzalez–Flores has also identified opinions in which the BIA held that an alien was entitled to voluntary departure, but each of those cases similarly involved aliens with significant positive equities. In *Matter of Gonzales–Figeroa,* the BIA upheld a grant of voluntary departure where the alien had lived in the United States for fifteen years, had a pending visa petition filed by his lawful permanent resident mother, and his sister and two nieces were United States citizens. 2006 WL 729784, at *1–2 (BIA Feb. 10, 2006). Although the alien in that case had four assault convictions and a conviction for resisting arrest, the BIA credited the alien's testimony that the convictions were the result of a drinking problem, and that he no longer drank after successfully completing a rehabilitation program. *Id.* at *1. Similarly, in *Matter of Hernandez–Garcia,* the BIA reversed a denial of voluntary departure where the alien had a United States citizen wife and child, even though the alien had impersonated a United States citizen in order to procure a passport. 2012 WL 1705671, at *1 (BIA Apr. 11, 2012); *see also Matter of Pineda–Castellanos,* 2005 WL 3833024, at *1–2 (BIA Nov. 16, 2005) (affirming an IJ's grant of voluntary departure to an alien with a lawful permanent resident wife and three children, but indicating that such relief was barely warranted given the negative equities of six criminal convictions). By contrast, the BIA affirmed a denial of voluntary departure where the alien was arrested twice for driving on a suspended license and once for a DUI, despite the alien's family ties to the United States. *Matter of Posadas–Posadas,* 2012 WL 371659, at *1–2 (BIA Jan. 18, 2012).

As these cases illustrate, Gonzalez–Flores has failed to carry his burden of showing that aliens with his scant positive equities received relief. *See Rojas–Pedroza,* 716 F.3d at 1263. In fact, Gonzalez–Flores has failed to identify even a single case on point, which in any event would be insufficient on its own. *See Valdez–Novoa,* 780 F.3d at 920–21.

Defendant Ramos-Barajas has not shown that he had even "minimal" positive equities. His felony conviction for possession of a controlled substance with intent to sell was at least as serious as Gonzalez–Flores' state robbery conviction. Defendant's lack of prior misdemeanor convictions, such as Gonzalez–Flores had, is not a significant distinguishing fact.

Defendant cites *United States v. Alcazar–Bustos* in support of his assertion that it was plausible that he would have been granted voluntary departure. As *Gonzalez-Flores* noted,

1   however, the defendant in *Alcazar–Bustos* had substantial positive equities which were

2   distinguishable from Gonzalez-Flores' "minimal" positive equities.  Defendant also cites *United*

3   *States v. Basulto-Pulido*, 219 Fed.Appx. 717 2007 WL 201100 (Jan. 25, 2007) in which the court

4   stated that if defendant had been informed about voluntary departure, he "might have applied for

5   and received this relief rather than conceding deportability, with its attendant harsh

6   consequences."  The court held that defendant had a plausible claim for voluntary departure, but

7   there is no indication that the court engaged in the two step process set forth in *Valdez-Novoa*

8   and *Gonzalez-Flores*.  *Basulto-Pulido* does not provide persuasive authority that Defendant

9   plausibly would have been granted voluntary departure in the absence of any positive equities.

10         Defendant relies on *Matter of M-A-S*, 24 I. & N. Dec. 762 (BIA), 2009 WL 729481

11  (2009) in which the respondent entered the United States on an F-1 student visa, but failed to

12  carry a full course load.  The Department of Homeland Security (DHS) initiated removal

13  proceedings, and the immigration judge initially found that respondent was ineligible for any

14  relief from removal.  While the case was on appeal, DHS requested that the removal proceedings

15  be reopened and that respondent be allowed to again apply for voluntary departure.  On remand,

16  the immigration judge denied the respondent's request for asylum, withholding of removal, and

17  protection under the Convention Against Torture.  The immigration judge granted respondent

18  voluntary departure, but ordered that he be held in custody until his departure.  The respondent

19  appealed the denial of his asylum and other applications, and the denial of bond pending his

20  voluntary departure.  The respondent asserted that he feared harm if he returned to Qatar because

21  the FBI had suggested to him in an interview that he had ties to terrorist groups.  The

22  circumstances in *Matter of M-A-S* are not similar to those in this case.  The respondent did not

23  have any negative equities other than he had not complied with the education requirements of his

24  student visa.  There was no evidence that he had committed or been convicted of any crime.  *M-*

25  *A-S* did not involve a challenge to the grant of voluntary departure, and there was no discussion

26  regarding the factors that weighed for or against granting voluntary departure.

27         In *Matter of Pina-Galindo*, 26 I. & N. Dec. 423 (BIA 2014), the respondent had multiple

28  convictions related to intoxication, including a 2005 third degree felony conviction for driving

1    while intoxicated.  The immigration judge denied respondent's motion for cancellation of

2    removal because he was statutorily ineligible for that relief.  The immigration judge did,

3    however, grant him "the privilege of voluntary departure."  *Id.* at *423.  The decision dealt

4    entirely with the denial of respondent's request for cancellation of removal, and there was no

5    discussion of the equities that weighed for or against the grant of voluntary departure.

6         In *Matter of Perez-Valle*, 17 I. & N. Dec. 581 (BIA 1980), the issue was whether

7    respondent was a citizen of the United States as he claimed.  Although the record indicated that

8    respondent was granted "voluntary return" to Mexico in 1966, there was no discussion regarding

9    the merits of that earlier decision or what negative or positive equities may have existed in 1966.

10        In *In re: Alicia Brumant*, 2013 Immig. Rptr. LEXIS 4884 (BIA Nov. 29, 2013), the board

11   held that the respondent, a lawful permanent resident, was subject to removal based on her

12   conviction for possession of a controlled substance.  The immigration judge granted respondent

13   voluntary departure.  Although the decision did not discuss the positive or negative equities

14   relating to the grant of voluntary departure, the fact that respondent was a lawful permanent

15   resident is a significant positive equity and distinguishes *Brumant* from this case.

16        In *In re: Clemente Jimenez*, 2011 Immig. Rptr. LEXIS 7466 (BIA Nov. 29, 2011), the

17   immigration judge denied the respondent's request to continue his removal hearing so that his

18   mother could become a naturalized citizen and respondent's visa preference category could be

19   converted to a Category 1 family preference, thereby increasing his chances of being able to

20   adjust his status inside the United States.  The immigration judge granted respondent voluntary

21   departure.  In affirming the denial of a continuance, the board noted that respondent had

22   committed another crime while the immigration proceedings were being continued, and that he

23   had an extensive criminal history, including convictions for burglary, driving under the

24   influence, and possession of a controlled substance.  The board did not discuss what positive

25   equities may have existed to support the grant of voluntary departure which was not appealed.

26        In *In re: Chialilui-Dlx*, 2011 Immig. Rptr. LEXIS 848 (BIA Mar. 23, 2011), the

27   respondent appealed the immigration judge's decision finding her inadmissible at entry based on

28   a criminal conviction in Taiwan for using an illegal drug-heroin.  The decision dealt with the

1   issue of whether the immigration judge properly relied on information provided about the drug

2   conviction.  The board noted that respondent entered the United States in 2000, and married a

3   United States citizen in 2004.  She gave birth to a child in 2008 who was also a United States

4   citizen.  The board affirmed the immigration judge's decision denying respondent's

5   admissibility.  Although there was no discussion regarding the immigration judge's grant of

6   voluntary departure, the respondent had significant positive equities; a husband and child who

7   were United States citizens and an eight year period of continuous residence in the United States.

8          In *In re Robeledo-Amaya*, 2008 Immig. Rptr. LEXIS 9267 (BIA Dec. 18, 2008), the

9   board affirmed the immigration judge's denial of respondent's request for change of venue and

10   motion to continue proceedings.  The immigration judge found that respondent was not eligible

11   for a waiver under section 212(h) on the INA based on his 2007 state conviction for possession

12   of cocaine.  The board reversed the immigration judge's denial of respondent's request for

13   voluntary departure based his conclusion that he did not have legal authority to grant such relief.

14   The board stated that "[t]he record reflects that despite the respondent's drug conviction, the

15   Immigration Judge would have granted voluntary departure in discretion."  *Id.* at *4.  The board,

16   however, did not discuss the equities or circumstances that warranted granting voluntary

17   departure.

18          In *United States v. Gamez-Irias*, 2016 WL 4376340 (N.D.Cal. Aug. 17, 2016), the district

19   court followed *Gonzalez-Flores* in holding that defendant failed to prove that he was prejudiced

20   by the immigration judge's failure to inform him that he was apparently eligible for voluntary

21   departure.  The defendant had minimal negative equities and had no positive equities.  The

22   defendant argued that voluntary departure is a less significant form of relief than others and

23   therefore requires a lesser showing of equities.  He also argued that positive equities are only

24   relevant to compensate for negative equities such as a criminal conviction.  The court rejected

25   this argument, noting that defendant cited no cases supporting that proposition.  *Id.* at *4.  The

26   court also found that the cases cited by defendant did not support his claim that he plausibly

27   would haven been granted voluntary departure.  *Id.* at *4.  In *United States v. Torre-Hernandez*,

28   2018 WL 3058857 (D.Idaho June 20, 2016), the court found that it was plausible that defendant

1   would have been granted voluntary departure if he had given the opportunity to apply for that

2   relief.  The defendant had several positive equities, including (1) strong family ties within the

3   United States because he had two children who were born here and were United States citizens,

4   and his half-sister, with whom he had recently resided, had legal status; (2) he had primarily

5   lived in the United States for the previous 14 years, coming to the United States as a young man;

6   and (3) he had a history of employment in the United States.  Defendant's negative factors

7   including misdemeanors for disturbing the peace and driving under the influence of alcohol, and

8   prior deportations and a prior unlawful reentry conviction.  The court, quoting *United States v.*

9   *Juarez-Franco*, 2013 WL 1285105 (S.D.Cal. Mar. 27, 2013), stated that it was "[i]mportant . . .

10  that the alien had not been convicted of any drug offenses, and did not 'have any serious or

11  violent criminal history.' *Id.* at \*6." *Id.* at \*4.

### CONCLUSION

13      Defendant Ramos-Barajas has not carried his burden of showing that it was plausible that

14  he would have been granted voluntary departure.  Defendant had a prior felony conviction for

15  possession of a controlled substance with intent to sell.  He does not have any positive equities

16  that would support the granting of voluntary departure.  He was, therefore, not prejudiced by the

17  immigration judge's failure to inform him that he was apparently eligible for voluntary

18  departure.  Accordingly,

### RECOMMENDATION

20      **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss Indictment

21  (ECF No. 22) be **denied**.

22      DATED this 4th day of April, 2019.

24  _____
    **GEORGE FOLEY, JR.**
    **UNITED STATES MAGISTRATE JUDGE**

### NOTICE

27      Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be

28  in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has

11

1    held that the courts of appeal may determine that an appeal has been waived due to the failure to

2    file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit

3    has also held that (1) failure to file objections within the specified time and (2) failure to properly

4    address and brief the objectionable issues waives the right to appeal the District Court's order

5    and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153,

6    1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28